IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| PAUL D. KATEKARU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-CV-00349-W-DGK |
| | ) | |
| CAMERON EGAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING PLAINTIFF'S MOTION TO REVISE THE COURT'S PRIOR ORDER

This case arises from Lee's Summit Police Officer Cameron Egan's ("Officer Egan") arrest of Plaintiff Paul Katekaru ("Plaintiff") for failure to follow Officer Egan's directives. Following Plaintiff's arrest, temporary imprisonment, and eventual release, he filed suit in this Court against Officer Egan, Lee's Summit Police Sergeant Greg Bryant ("Officer Bryant"), Lee's Summit Municipal Court Prosecutor Terri Cipolla Round ("Prosecutor Round"), and the City of Lee's Summit, Missouri (the "City"). The three-count Complaint respectively alleged (1) four claims under 42 U.S.C. § 1983 against Officer Egan in his individually capacity ("Count I"); (2) one claim for malicious prosecution against Officer Egan, Officer Bryant, and Prosecutor Round ("Count II"); and (3) one claim for municipality liability under 42 U.S.C. § 1983 against the City ("Count III").

The Court previously dismissed Counts I and II with prejudice, dismissed Count III without prejudice, and granted Plaintiff leave to amend Count III (the "Dismissal Order"). Now before the Court are Plaintiff's motion to alter the judgment (Doc. 16), the City's motion to dismiss the second amended complaint for failure to state a claim (Doc. 20), and the City's motion to strike the third amended complaint (Doc. 27). Construing Plaintiff's motion as a

motion pursuant to Federal Rule of Civil Procedure 54(b) and finding that the Court's previous order contained a significant error, the Court GRANTS Plaintiff's motion (Doc. 16). Because the Court also GRANTS Plaintiff leave to amend the Complaint to fix the deficiencies noted below, the Court DENIES the City's motions (Docs. 20, 27).

## Factual and Procedural Background

### I. The factual background of this dispute.

Plaintiff's first amended complaint (Doc. 4) (the "Complaint") and attached documents alleged the following. On April 8, 2011, Plaintiff's nephew, James Jenkins ("Jenkins"), who lived with Plaintiff at the time, arrived at Plaintiff's residence in Lee's Summit in an intoxicated state. When Plaintiff confronted Jenkins regarding his intoxication, Jenkins immediately became belligerent. Jenkins shouted at Plaintiff and destroyed several of Plaintiff's possessions, including his computer and microwave. Plaintiff called 911 to report the disturbance, which further enraged Jenkins. After hearing Jenkins' outburst, Kevin Katekaru, Plaintiff's other nephew who also resided with him, attempted to intervene. An altercation then ensued between the two nephews, resulting in Jenkins procuring a knife and threatening to harm himself and Kevin Katekaru. As the altercation transitioned to the front lawn, Plaintiff wrestled the knife away from Jenkins.

Immediately thereafter, Officer Egan arrived at Plaintiff's residence with Lee's Summit Police Officer Jason Spaeth ("Officer Spaeth"), and the two ordered Plaintiff to drop the knife. The two officers then confronted Jenkins, but he fled the scene. Officers Egan and Spaeth proceeded to question Plaintiff about Jenkins. In response, Plaintiff stated that he was unsure whether Jenkins was currently armed but that Jenkins had access to firearms inside the house. Plaintiff then criticized Officer Egan and other members of the Lee's Summit Police Department

by calling them incompetent and worthless. When Plaintiff proceeded towards his home, Officer Egan forbade Plaintiff from doing so. Plaintiff ignored the order and walked toward the house. Officer Egan then grabbed Plaintiff, placed him under arrest, and provided him with a written citation for failure to obey an order of a police officer. Officer Spaeth and Lee's Summit Police Officer Phillip Stewart then entered Plaintiff's home, purportedly to search for Jenkins.

Eventually, Officers Stephen Grubb and Scott McMillan of the Lee's Summit Police Department Canine Unit arrived at the scene. Following a brief search, these officers located Jenkins hiding in the backyard of a nearby house. Sometime after Jenkins' detainment, Officer Egan transported Plaintiff to the police station, where he remained until he posted bond thirty-four hours later. On July 29, 2011, Prosecutor Round dismissed the case against Plaintiff.

**II. The procedural background of the case.**

On April 8, 2013, proceeding *pro se*, Plaintiff filed a three-count lawsuit in this Court. Count I alleged four separate violations of 42 U.S.C. § 1983 against Officer Egan individually, including claims for false arrest, retaliatory arrest, an unconstitutional search of his home, and conspiracy to violate his constitutional rights. Count II alleged a Missouri common law claim for malicious prosecution against Officer Egan, Officer Bryant, and Prosecutor Round. Count III alleged a violation of 42 U.S.C. § 1983 against the City and Prosecutor Round for failure to properly train and supervise the Lee's Summit police officers.

On January 31, 2014, the Court dismissed Counts I and II with prejudice and Count III without prejudice, and it granted Plaintiff leave to amend Count III (Doc. 15). The Court dismissed Counts I and II of the Complaint because it held that Plaintiff essentially pled himself out his alleged claims. With respect to Count I, the Court found that the Complaint attempted to allege four putative claims under 42 U.S.C. § 1983 for (1) false arrest, (2) retaliatory arrest, (3)

3

warrantless home search, and (4) conspiracy to violate his constitutional rights. The Court held that lack of probable cause was an integral element of the false and retaliatory arrest claims, and the Complaint actually pled Officer Egan had probable cause to arrest Plaintiff for violating an ordinance. In particular, the Court found that Officer Egan had probable cause to arrest Plaintiff for violating Section 17-26(D) of the Lee's Summit Municipal Code. This section makes it unlawful for any individual to knowingly disobey or oppose a police officer's command made during an officer's attempt to "execute and carry into effect any provision" within the municipal code. Lee's Summit, Mo., Municipal Code § 17-26(D) (1988). The Court ultimately found that Officer Egan forbade Plaintiff from entering his home because he was attempting to carry into effect Section 17-26(A)(2) of the Municipal Code, which the Court interpreted as proscribing an individual's threatened interference with an arrest, stop, or detention of an another individual. Passages in the Complaint suggested that Officer Egan issued that command to aid his detention of Jenkins, so the Court found that Officer Egan was attempting to carry into effect Section 17-26(A)(2) when he commanded Plaintiff not to enter his home. Thus, because the Complaint alleged that Plaintiff disobeyed this lawful command, the Court found that Officer Egan possessed probable cause to arrest him for violating Section 17-26(D).

As for the warrantless home search claim against Officer Egan, the Court found the Complaint actually pled that Officer Egan did not conduct the home search. On the conspiracy to violate his constitutional rights claim, the Court found that the Complaint failed to allege sufficient facts to state a claim because it did not plead that Officer Egan possessed the requisite intent.

Regarding Count II, the Court found that Plaintiff's state common law claim for malicious prosecution failed because he pled probable cause existed and he failed to plead malice. Finally, the Court dismissed Count III for failure to state a claim for municipal liability.

After entry of the Dismissal Order, Plaintiff filed a motion to alter the Court's judgment and a second amended complaint containing a sole claim for municipal liability. The City then moved to dismiss the second amended complaint for failure to state a claim, and then Plaintiff, without obtaining leave from the Court, filed a third amended complaint to rectify perceived deficiencies in the second amended complaint. All motions are now ripe for review.

**Standard**

Plaintiff brings his challenge pursuant to Federal Rule of Civil Procedure 59(e). The rule's express language, however, only empowers a court to alter or amend a judgment. Fed. R. Civ. P. 59(e). Here, there is no judgment to amend or alter. Although the Court dismissed all claims, it also granted Plaintiff leave to amend Count III, so the Court never entered a final judgment. *See Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 856 (8th Cir. 2008) ("Here, the District Court's December 12, 2006, order dismissing ASC's claims against Deloitte entities was not a final judgment because it dismissed fewer than all of the claims asserted in ASC's lawsuit."). Based upon the lack of a final judgment, Defendants urge the Court to deny Plaintiff's motion out of hand. The Court declines this invitation because doing so would elevate form over substance.

Rather, the Court construes Plaintiff's motion as one brought pursuant to Rule 54(b). *See K.C.1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007) (construing a party's motion initially brought under Rule 59(e) as a motion pursuant to Rule 54(b)). This rule allows the Court to revise any order—whether final or not—prior to entry of judgment. Fed. R. Civ. P.

5

54(b); *see Auto Servs. Co.*, 537 F.3d at 857 (citing Rule 54(b) in support of the proposition that a district court possesses the authority to revise a non-final order). While Rule 54(b) clearly entitles a party to seek voidance of an interlocutory order, the showing he must make to obtain this relief is rather opaque. Some circuit caselaw suggests that the standards governing motions pursuant to Federal Rule of Civil Procedure 60(b) may apply. *See Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006). But numerous district courts, including this one, have applied a less exacting standard to motions challenging non-final, interlocutory orders. *See Halloran v. Houlihan's Rests., Inc.*, NO. 11-cv-01028-DGK, 2013 WL 544011, at *1 (W.D. Mo. Feb. 12, 2013); *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 434 F. Supp. 2d 640, 647 (N.D. Iowa 2006). This lesser standard, however, still requires a movant to demonstrate: (1) that he did not have a fair opportunity to argue the matter previously, and (2) granting the motion is necessary to correct a significant error. *Halloran*, 2013 WL 544011, at *2.

## Discussion

Plaintiff raises a two-pronged challenge to the Court's previous order. Although his argument is unclear and inconsistent at times, he essentially contends that the Court made both a legal and factual misstep in finding that he pled Officer Egan had probable cause to arrest him. As for his legal argument, Plaintiff contends that Section 17-26(A)—the provision Officer Egan was purportedly attempting to carry into effect—only prohibits an individual from interfering with an *arrest* of another, not the mere *detention* of another. On the factual front, Plaintiff posits that the Court erroneously found that Officer Egan was attempting to *arrest* Jenkins, although the Complaint only supports an inference that the officers may have been trying to *detain* him. According to Plaintiff, these errors in combination led the Court to the erroneous conclusion that

Officer Egan had probable cause to arrest Plaintiff when he disobeyed Officer Egan's command not to enter the residence. The Court addresses each contention separately.

## I. Section 17-26(A) prohibits individuals from interfering with arrests, stops, or detentions.

The Court summarily rejects Plaintiff's first argument for two reasons. First, Plaintiff could have raised this argument in response to Defendants' initial motion to dismiss, but he failed to do so. *See Halloran*, 2013 WL 544011, at *2. In any event, even assuming he was precluded from raising this argument previously, the Court finds that it did not make a significant error in determining that the ordinance applies to interfering with arrests, stops, and detentions. Accordingly, the Court rejects Plaintiff's legal argument.

## II. When construed liberally, the Complaint pleads lack of probable cause.

Broadly construing Plaintiff's factual argument, he appears to present a twofold contention. First, he argues that the Court erroneously found that the Complaint stated Officer Egan was in the process of arresting Jenkins. Second, Plaintiff asserts that the Complaint adequately pled lack of probable cause. Because both arguments are based upon findings and conclusions from the Dismissal Order, Plaintiff did not have a previous opportunity to raise these arguments. *See Halloran*, 2013 WL 544011, at *2. Thus, the Court addresses the merits of each below.

Plaintiff's first argument is factually inaccurate. To support his theory that the Court incorrectly found that Officer Egan was in the process of arresting Jenkins, Plaintiff cites to the Court's summary of Officer Egan's motion to dismiss argument. In the order dismissing the claims, the Court restated Officer Egan's argument as, "Essentially, Officer Egan contends that he was in the process of locating and detaining Jenkins." (Doc. 15 at 5). This clearly identifies that Officer Egan was attempting to detain Jenkins. In the next sentence, however, the Court

7

continued the summary by stating, "In order to prevent Plaintiff's interference with the *arrest*, Officer Egan forbade Plaintiff from entering his residence because there was a possibility Jenkins had reentered Plaintiff's home." (*Id.* (emphasis added)). Plaintiff asserts that the Court's use of the term "arrest" in its summary of Officer Egan's argument is a manifest factual error.

Although the Court inadvertently stated "arrest," it is clear from its analysis section that it *found* that the Complaint, at most, supported the inference that Officer Egan was in the process of *detaining* Jenkins. The linchpin sentence in the Court's analysis stated, "When considered together, the allegations in this passage imply that Plaintiff's physical presence in the home would have obstructed or hindered the *attempted detention* of Jenkins." (Doc. 15 at 6) (emphasis added). This unequivocal statement in the analysis section clears up any confusion raised by the Court's use of the term "arrest" in the summary section of the argument. Accordingly, Plaintiff's first contention lacks merit.

The Court cannot say the same for Plaintiff's second argument. Plaintiff argues that contrary to the Court's previous conclusion, he pled lack of probable cause, which is an element of the false arrest and retaliatory arrest claims in Count I. Much like his response to the motion to dismiss, however, Plaintiff fails to direct the Court to specific allegations in the Complaint that support this assertion. Despite the lackluster briefing, the Court must liberally construe a *pro se* complaint, such as this one, to determine whether the essence of an allegation is discernible from the pleadings and attached documents. *See Topchian v. JPMorgan Chase Bank, N.A.*, —F.3d—, No. 13-2128, 2014 WL 3703995, at *9 (8th Cir. July 28, 2014) (holding that the plaintiff stated a claim of breach of contract because the essence of the claim was apparent from the complaint and attached document despite the fact that the plaintiff never raised such an argument at the

district court level).  Upon further review of the Complaint, the Court finds that the Complaint and attached documents support an inference that Officer Egan lacked probable cause in making the arrest.

In the Dismissal Order, the Court found that Officer Egan had probable cause to arrest Plaintiff for violating 17-26(D).  Again, for criminal liability to attach under this section, a police officer must be "executing or attempting to execute and carry into effect any provision of the Code…."  Lee's Summit, Mo., Municipal Code § 17-26(D) (1988).  The Court ultimately found that the Complaint implied that Officer Egan was attempting to carry into effect Section 17-26(A)(2) when he commanded Plaintiff not to enter his residence, which Plaintiff ignored.  The Court based this conclusion upon the following sentences from the Complaint:  "Plaintiff's presence in his residence would have impeded the residence search and imposed a perceived safety threat to the police with respects to that residence search…The purpose of the warrantless search was to exclude the possibility that plaintiff's nephew, James C. Jenkins had returned back to the residence."  (Doc. 4 at 13).

To be fair, one reasonable inference from these sentences is that Plaintiff's presence would have interfered with the *search* for Jenkins.  This inference, however, does not definitively show that Officer Egan's command was made while carrying out Section 17-26(A)(2), because there is no indication that presence would have interfered with the *detention* of Jenkins.  Moreover, there are other allegations that Officer Egan was not carrying into effect any ordinance provision, and that he told him not enter the residence because it would have posed a safety threat to the police.  This latter allegation is even bolstered by Officer Egan's report attached to the Complaint in which he states, "We did not know if Jenkins was able to make it back to the house so I did not want Paul going back into the house for safety reasons.  Paul

9

ignored my commands and I grabbed onto him as he headed towards the front door." (Doc. 4 at 36). Both this excerpt and the Complaint allegations to the same effect suggest a secondary reason for Officer Egan's command. And neither party addresses whether protecting a citizen from potential harm would constitute "executing or attempting to execute and carry into effect any provision of this Code," within the meaning of Section 17-26(D). Giving Plaintiff the benefit of all reasonable inferences from the Complaint, *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014), the Court cannot say this necessary element was satisfied. The Court thus cannot conclude, based solely on the allegations, that Officer Egan had probable cause to make an arrest under Section 17-26(D).

Liberally construing the Complaint and attached documents, the Court concludes that they arguably allege lack of probable cause. Thus, the dismissal with prejudice was a significant error.[1] *See Halloran*, 2013 WL 544011, at *2. Accordingly, the Court converts the dismissal to one without prejudice, which means that Plaintiff may amend his Count I allegations to fix the other deficiencies discussed in the Dismissal Order. However, in any new amended complaint, Plaintiff shall separate his various Section 1983 claims into distinct counts.

### III. The Court converts dismissal of Count II to without prejudice.

In its prior order, the Court dismissed Count II with prejudice because lack of probable cause was an element of malicious prosecution. The Court now converts that dismissal to one without prejudice due to the above findings. Plaintiff may refile an amended complaint that addresses the other Count II deficiency noted in the Dismissal Order.

---

[1] The Court does not reach today's decision lightly. Indeed, the Court is mindful that this type of relief is quite rare. Nevertheless, the unique circumstances of this case, including Plaintiff's *pro se* status and inartful pleading, contributed to its decision to revise its prior judgment.

### IV. The Court denies the City's motions as moot.

The City filed a motion to dismiss Plaintiff's second amended complaint which raises a sole claim for municipal liability under 42 U.S.C. § 1983 (Doc. 20). In response, Plaintiff filed a third amended complaint to fix deficiencies that he perceived to exist after reviewing the City's motion. The City then moved to strike this complaint for failure to seek leave of court prior to filing (Doc. 27).

In his second and third amended complaints, Plaintiff reformulated his municipal liability theory to accommodate for the Court's prior finding that Officer Egan possessed probable cause to make the arrest. Since the Court reverses that finding, the claims in the second and third amended complaints—and the City's protestations against those claims—are now moot. Accordingly, the City's motions (Docs. 20, 27) are DENIED AS MOOT and Plaintiff may include an amended claim for municipal liability along with his other claims.

### Conclusion

For the foregoing reasons, the Court GRANTS Plaintiff's motion (Doc. 16) and it DENIES the City's motions (Docs. 20, 27). Plaintiff shall file an amended complaint that complies with this Order within thirty (30) days.

**IT IS SO ORDERED.**

Date: September 23, 2014      /s/ Greg Kays
                              GREG KAYS, CHIEF JUDGE
                              UNITED STATES DISTRICT COURT