| | | |
|---|---|---|
| PAUL DAVID KATEKARU, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 4:13-CV-00349-DGK |
| CAMERON EGAN, et al., | ) ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pro se Plaintiff Paul David Katekaru ("Katekaru") alleges violations of federal and state laws arising out of his arrest, detainment, and prosecution for allegedly violating a city ordinance. Now before the Court is Defendants' motion for summary judgment (Doc. 56). For the reasons below, the Court GRANTS IN PART the motion. The Court grants summary judgment on Counts I and II, and dismisses Count III without prejudice.

**Standard**

Defendants move for summary judgment on all claims pled against them. A moving party is entitled to summary judgment if he "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Only those facts supported by the record are before the court on a summary judgment motion. Unless specifically controverted by the nonmoving party, all facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment. L.R.

56.1(a). To specifically controvert a factual position, the nonmoving party must "refer specifically to those portions of the record upon which [he] relies." *Id.* Once the parties have satisfied their burdens, the court views the resulting facts in the light most favorable to the nonmoving party and draws all reasonable inferences in his favor. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

**Factual Background**

Because Katekaru fails to specifically controvert most of Defendants' facts, the Court deems them admitted. *See* L.R. 56.1(a). Viewing the remainder of the parties' factual positions in the light most favorable to Katekaru, the Court finds the relevant facts to be as follows. *See Tolan*, 134 S. Ct. at 1866.[1]

Katekaru lived with his nephew, James Jenkins ("Jenkins"), in Lee's Summit, Missouri. One night, a dispute arose between Katekaru and Jenkins at their house. The dispute escalated, so Katekaru called 911 for assistance from the Lee's Summit Police Department. As Katekaru hung up the phone, Jenkins pulled a knife on him. Katekaru successfully wrestled for control of the knife.

Police officers, including Defendant Cameron Egan ("Officer Egan"), arrived to find Katekaru holding the knife. Officer Egan took it, and Katekaru explained to him what had happened inside. Katekaru told him that he had taken the knife because Jenkins had threatened to hurt himself. Officer Egan, along with Officer Jason Spaeth ("Officer Spaeth"), saw Jenkins standing nearby and approached him to investigate the disturbance and ensure he was not a threat

---

[1] The Court also excludes several immaterial facts raised by Katekaru. For instance, Defendants claim that officers were dispatched to Katekaru's residence at 11:45pm. Katekaru vigorously denies that the officers were actually dispatched at 11:45pm. The officers' exact time of arrival is irrelevant for purposes of this motion, because it does not "affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

to himself. Jenkins fled from the officers. The officers commanded him to stop, but he continued running. The officers chased him through other yards, eventually losing track of him.

As Officer Egan returned to Katekaru and Jenkins's front yard, Katekaru turned and began walking toward his front door. Believing that Jenkins may have snuck around and reentered the house through the back without the officers seeing, Officer Egan ordered Katekaru not to enter his residence. Katekaru ignored the command and began walking toward the house, telling Officer Egan that he was "worthless and incompetent." Officer Egan arrested him.

Katekaru's citation charged him with violating Lee's Summit, Mo., Code of Ord. § 17-26(D), which makes it unlawful "to willfully and knowingly obstruct, resist, oppose or fail to obey a lawful command of any . . . officer of the City executing or attempting to execute and carry into effect any provision of this Code." The provision of the Code that Officer Egan was "executing or attempting to execute" was § 17-26(A)(1), which prohibits a person from "[r]esist[ing] the arrest, stop or detention of himself by . . . fleeing from such officer" if he knows that a law enforcement officer is attempting to lawfully detain him. Thus, Officer Egan believed that Jenkins was resisting a stop by fleeing him (a violation of § 17-26(A)(1)), and that Katekaru was obstructing Officer Egan from stopping that underlying offense (a violation of § 17-26(D)).[2]

After he arrested Katekaru, Officer Egan called Defendant Terri Round ("Round"), the municipal prosecutor for Lee's Summit, and told her information about the incident. Round ordered a member of the Lee's Summit Police Department, Defendant Greg Bryant ("Bryant"), to write an additional explanatory sentence on the citation.

---

[2] Katekaru counters that the subsection that he had allegedly obstructed Officer Egan from executing was actually § 17-26(A)(*2*), which prohibits individuals from physically interfering with the detention of *another* person. Because Katekaru failed to cite specific parts of the record for this assertion, he has constructively admitted Defendants' statement that Officer Egan was attempting to execute § 17-26(A)(*1*). *See* L.R. 56.1(a); *Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir. 1983) ("[P]ro se litigants are not excused from compliance with relevant rules of the procedural and substantive law.").

Katekaru then filed this lawsuit against Officer Egan, Bryant, Round, and the City of Lee's Summit ("the City").

## Discussion

Katekaru's Amended Complaint pleads three counts: violation of his constitutional rights under 42 U.S.C. § 1983 for false arrest (Count I); common law malicious prosecution (Count II); and violation of his constitutional rights under § 1983 for enforcing an unconstitutional ordinance (Count III). Defendants move for summary judgment on all claims.

### I. Because he had probable cause to charge Katekaru, Officer Egan is entitled to qualified immunity against Katekaru's § 1983 false arrest claim.

Count I is a § 1983 false arrest claim against Officer Egan. Section 1983 creates a private cause of action for the violation of federal rights by an official acting under color of state law. 42 U.S.C. § 1983. Katekaru alleges that his arrest violated the Fourth Amendment because it was unsupported by probable cause. Officer Egan raises the affirmative defense of qualified immunity.

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015). A police officer sued under § 1983 is entitled to qualified immunity unless (1) the alleged facts establish a violation of a constitutional right; and (2) the right was "clearly established" at the time of the violation. *Id.*

The first prong asks whether Officer Egan violated Katekaru's constitutional right to be free from arrest absent probable cause. Katekaru argues that Officer Egan lacked probable cause to determine that he violated § 17-26(D), that is, he willfully and knowingly obstructed Officer Egan from implementing § 17-26(A)(1) against Jenkins.

4

"If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "Probable cause exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Greenman*, 787 F.3d at 888.[3]

Construing the facts in the light most favorable to Katekaru, Officer Egan had probable cause to believe Katekaru willfully and knowingly disobeyed a command that Officer Egan issued to stop Jenkins from fleeing. Officers Egan and Spaeth attempted to ask questions of Jenkins, but he fled. Thus, Jenkins was resisting a stop by fleeing. Officer Egan, while trying to enforce the code prohibiting such, returned to Katekaru and ordered him not to reenter the house. Officer Egan made this command because he viewed Jenkins as a safety threat and feared that Jenkins may have been able to circle back and gain access to the house. Katekaru heard him, yet refused and began walking back into the residence. On these facts, no reasonable factfinder could conclude that Officer Egan lacked a reasonable basis for believing that Katekaru was willfully and knowingly disobeying his command, and that that command was issued in an "attempt to execute" § 17-26(A)(1) against Jenkins. *See id.* Because Officer Egan had probable cause to believe that Katekaru had committed a crime, then he was justified in arresting him and did not violate Katekaru's constitutional rights. *See Atwater*, 532 U.S. at 354. Katekaru having failed to satisfy the first prong of qualified immunity, the Court grants Officer Egan qualified

---

[3] An officer is entitled to qualified immunity even if he had only "arguable" probable cause, which "exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is objectively reasonable." *Greenman*, 787 F.3d at 888. As explained below, the Court holds that no reasonable jury could conclude that Officer Egan lacked actual probable cause to arrest Katekaru. Therefore, the Court need not apply the more lenient standard of "arguable" probable cause.

5

immunity on this claim without considering the second prong.  *See Greenman*, 787 F.3d at 887–88.

### II. Because Officer Egan had probable cause to charge Katekaru, Katekaru cannot make a claim for malicious prosecution.

In Count II, Katekaru seeks damages against Officer Egan, Bryant, and Round for the Missouri tort of malicious prosecution.  A claim for malicious prosecution comprises six elements, including "lack of probable cause for filing the suit."  *State ex rel. O'Basuyi v. Vincent*, 434 S.W.3d 517, 519 (Mo. 2014).  As discussed above, the facts in the light most favorable to Katekaru establish that Defendants *did* have probable cause to believe Katekaru had violated § 17-26(D).  Therefore, Officer Egan, Bryant, and Round are entitled to judgment as a matter of law on Count II.  *See id.*

### III. Katekaru lacks standing to challenge § 17-26(A)(2)'s validity.

In Count III, Katekaru seeks damages against the City under § 1983 for unlawfully applying § 17-26(A)(2) against him.  His latest complaint suggests a number of theories for why § 17-26(A)(2) is invalid; he claims that the ordinance conflicts with the Fourth Amendment, the Due Process Clause of the Fourteenth Amendment, and a superior state statute.  Whatever the merits of his argument, he lacks standing to raise it.

"The party invoking federal jurisdiction bears the burden of establishing standing." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014).  Standing requires "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'"  *Id.* at 2341 (alteration in original).

Count III lacks the requisite "causal connection."  The "conduct complained of" is the City's enactment and enforcement of a purportedly invalid ordinance, Section 17-26(A)(*2*).  The

6

"injury . . . complained of" is Katekaru's arrest, detention, and prosecution for interfering with Officer Egan's execution of Section 17-26(A)(*1*). That is, the City charged Katekaru under a different subsection than the one he complains is void. Katekaru makes no claim or argument that Section 17-26(A)(1) is invalid. There is no connection between the injury and the wrong, so Katekaru lacks standing to pursue Count III. *See Susan B. Anthony List*, 134 S. Ct. at 2341–42.

Katekaru argues that because the City previously admitted it had charged him under Section 17-26(A)(2), it is now judicially estopped from claiming he was charged under Section 17-26(A)(1). Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Hutterville Hutterian Brethren, Inc. v. Sveen*, 776 F.3d 547, 557 (8th Cir. 2015). Judicial estoppel applies only if "a party's later position [is] clearly inconsistent with its earlier position." *Id.*

The City's "later position" is that Katekaru was charged with abetting a violation of Section 17-26(A)(1). Its "earlier position" comes from its motion to dismiss, in which it cited Section 17-26(A)(2) and discussed how Jenkins violated that subsection. The procedural posture explains why the City discussed Section 17-26(A)(2): it was required to take as true Katekaru's allegation that he was charged under that subsection. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Here, on a motion for summary judgment, the City may offer and rely on its own statement of that fact that it charged him under Section 17-26(A)(1). The City's earlier commentary is inapposite in this context. Therefore, the City's positions are not "clearly inconsistent," and judicial estoppel does not apply. *See Hutterville Hutterian Brethren*, 776 F.3d at 557.

7

In light of the facts now before the Court, the City's allegedly invalid ordinance did not cause Katekaru's injury. The Court has no jurisdiction to consider Count III, *see Already, LLC v Nike, Inc.*, 133 S. Ct. 721, 726 (2013) (requiring standing for subject-matter jurisdiction), and so dismisses that count without prejudice, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998) (prohibiting federal courts from ruling on the merits of claims over which they lack jurisdiction).

## Conclusion

For the foregoing reasons, the Court GRANTS IN PART Defendants' Motion for Summary Judgment (Doc. 56). Judgment is entered in favor of Defendants on Counts I and II. Count III against the City is dismissed without prejudice.

**IT IS SO ORDERED.**

Date:   August 10, 2015                              /s/ Greg Kays
                                                    GREG KAYS, CHIEF JUDGE
                                                    UNITED STATES DISTRICT COURT